# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA L. ENGLAND, | ) |
| | ) |
|       Plaintiff, | ) |
| v. | )   Case No. CIV-11-62-JHP-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## REPORT AND RECOMMENDAITON

The claimant Rita L. England requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 24, 1959, and was thirty-four years old at the time of the applicable administrative hearing. (Tr. 279). She graduated high school, completed training for office administration, and has worked as an administrative assistant. (Tr. 55, 260). The claimant alleges she has been unable to work since December 31, 2002, due to epilepsy and problems with her epilepsy medications, nerve pain in her legs, migraine headaches, lumbar deterioration, bursitis, and high blood pressure. (Tr. 255).

## Procedural History

On January 31, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. Her application was denied. ALJ Jeffrey Wolfe conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated February 6, 2009. (Tr. 10-17). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ found that the claimant met the insured status through December 31, 2002, and made his decision at step two of the sequential evaluation in light of the date last insured. He found that the claimant's medically determinable impairments of depression, urinary tract infection, rotator cuff syndrome, and bronchitis were resolved in

under twelve months; that the claimant's migraine headaches, seizures, and hypertension were too slight to interfere with her ability to do basic work activities; and that her low back pain arose after her date last insured. (Tr. 17).

**Review**

The claimant contends that the ALJ erred in applying the step two analysis. She argues in particular that the ALJ failed to properly consider the side effects of the claimant's seizure medications and her headaches, as well as the opinion of her treating physician, Dr. William Knubley. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly consider the evidence from Dr. Knubley's treatment notes, and the decision of the Commissioner should therefore be reversed.

The medical evidence reveals the following. Dr. Dale Asbury treated the claimant from December 21, 2001, through March 31, 2003. (Tr. 295-303). On December 21, 2001, Dr. Asbury treated the claimant for bronchitis and skin tags on her right inner thigh. (Tr. 303). Dr. Asbury treated the claimant for a urinary tract infection, increased blood pressure, and increased cholesterol on April 22, 2002. (Tr. 298). On October 22, 2002, he treated the claimant again for bronchitis, as well as rotator cuff syndrome, and advised her to return in "a month or two." (Tr. 302). On November 12, 2002, Dr. Asbury treated the claimant for "a laundry list of problems," including increased blood pressure, an improved right rotator cuff, a worse left rotator cuff, increased cholesterol, and *marked depression*. (Tr. 301). On December 3 and 30, 2002, the claimant returned for follow-up treatment of her cholesterol, blood pressure, rotator cuff syndrome, and depression. (Tr. 297, 300). Dr. Asbury noted myofascial low back pain on March 7,

2003. (Tr. 296). The claimant had another check-up in late March 2003 for her nausea, blood pressure, and cholesterol, as well as a urinary tract infection. (Tr. 295, 299).

Dr. William Knubley treated the claimant for seizures, migraine headaches, and depression during the same time. In his dictated notes on March 29, 2000, he states that he treated the claimant for complex partial seizures with secondary generalization, and he noted that the claimant had experienced no major seizures and only one "brief twitch" since her previous office visit. (Tr. 421). On June 13, 2000, Dr. Knubley increased the claimant's medication and released her to drive in August 2000. (Tr. 420). On October 30, 2000, Dr. Knubley again noted that the claimant had not experienced any seizures, but he also treated her for tinnitus and possible arthritis. (Tr. 419). Dr. Knubley again noted no seizures on December 21, 2000, as well as possible carpal tunnel syndrome, and tendinitis. (Tr. 418). On August 6, 2001, Dr. Knubley noted that the claimant had gone without seizures for approximately eighteen months, but that she was experiencing *increased depression*, insomnia, and migraine headaches at least twice a week. (Tr. 417). During that same visit, Dr. Knubley noted that the claimant was not tolerating her seizure medication well, specifically that it was making her groggy and sleepy all day. He gave the claimant the option of switching her medications, but was concerned that changing would cause her to have breakthrough seizures and "all the concomitant problems with more medicine." (Tr. 417). The claimant indicated she would let him know in four to six weeks. On September 14, 2001, Dr. Knubley noted that a recent change in the claimant's migraine medication had somewhat improved her headaches, and that she was also sleeping better. Dr. Knubley also suggested that the claimant consider getting a job, "as

it would probably make her feel better." (Tr. 416). On December 27, 2001, Dr. Knubley stated that there were no reported seizures and that her blood pressure was under control, but that she was still experiencing several migraines a month. (Tr. 415). By April 18, 2002, the claimant reported that she had not experienced any seizures, and that her headaches were well-controlled, but that she still experienced one to two per month. (Tr. 414). The claimant also reported pain and tingling in her extremities, but Dr. Knubley found it "hard to pin down anything," and noted the claimant had normal reflexes, strength, and sensation in her lower extremities. (Tr. 414). On February 5, 2003, Dr. Knubley noted the claimant was stable, and that an MRI showed several heterotopias as the likely cause of her seizures. As to her medications, Dr. Knubley stated that the claimant was "off of her amitriptyline and *on* Lexapro 10 mg at night that she has been on for about two months." (Tr. 319) [emphasis added]. He also noted, however, that the claimant reported obsessive thinking that caused her to fixate on a word by repeatedly spelling it in her head. He increased her depression medication (Lexapro) to see if that would help, because the claimant did not want to see a psychologist at that time. (Tr. 413). On November 14, 2003, Dr. Knubley's assessment stated that he could not "say she has anything other than chronic low back pain due to her current weight." (Tr. 411). He increased her seizure medication to see if it helped with foot pain/tingling, and continued her on depression medication. (Tr. 412). Dr. Knubley's records actually go through 2008, but only the ones surrounding the date last insured apply here. On February 27, 2007, he completed an Attending Physician's Statement, which diagnosed the claimant with complex partial seizures, migraine headaches, and chronic sleep

disorder. (Tr. 343). He further indicated that the claimant's symptoms would interfere with her attention an concentration and ability to tolerate work stress, that she would need to take unscheduled breaks during an eight-hour workday, that her impairments would result in good and bad days, and that they would affect her more than four days a month. (Tr. 343).

The claimant appeared and testified at an administrative hearing on November 19, 2008. She testified that she has been on seizure medications since 1996; that her medications make her sleepy, drowsy, and dizzy; and that she takes two naps a day. (Tr. 36). She testified as to her current physical status; discussed her headaches, which she stated she has been getting for years; and stated that she has been on medication for depression since approximately 2000. (Tr. 40-43). Additionally, she stated that she has taken medication for her blood pressure for years. (Tr. 41).

A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the

medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

The ALJ relied in part on an incorrect reading of Dr. Knubley's medical record. The ALJ read Dr. Knubley's March 2003 notes as stating that the claimant "'is off Amitriptyline and Lexapro' and was only on those medication for 'two months.'" (Tr. 15). This is a misstatement of the record. In fact, Dr. Knubley stated that the claimant had been on Lexapro for two months and he was continuing her on that medication at a higher dosage. (Tr. 319). Although the medical evidence regarding the claimant's depression is limited, there is evidence that the claimant was treated for depression for longer than twelve months, contrary to the ALJ's written opinion. "Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. U.S. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To apply the special "psychological review technique" (PRT), the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of functioning in four specific areas. *See Cruse*, 49 F.3d at 617. The four areas are: (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and (iv) episodes

of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(d)(2). Furthermore, the ALJ must specifically document his PRT findings. *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). *See also* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("At the administrative law judge hearing [level], the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)"); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (although not required to prepare the PRT form, the ALJ is "to document application of the technique in the decision."), *quoting* 20 C.F.R. §§ 1520(a)(e), 416.920(e). This error was not harmless because the ALJ conclusively denied benefits at step two. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (noting that "at step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity[,]" . . . but finding that error was harmless if benefits were not denied "conclusively at step two and [the ALJ] proceeded to the next step of the evaluation sequence.") [internal quotation marks omitted, citations omitted].

As discussed above, there was evidence in this case (albeit weak) that the claimant suffered from a mental impairment, *i. e.*, depression. The ALJ was therefore required to determine her degree of functioning in the above-discussed broad areas and to document his findings. The error here is reversible, because the ALJ improperly discounted the evidence as to the claimant's depression and the ALJ denied the claimant benefits at step two.

## Conclusion

In summary, the undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court REVERSE and REMAND the case for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma